**PEABODY COAL COMPANY; Old Republic Insurance Company, Petitioners,**

v.

**Arthur E. HILL, Respondent.**

No. 96–3556.

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1997.

Decided Aug. 18, 1997.

Laura Metcoff Klaus (argued and briefed), Mark E. Solomons (briefed), Arter & Hadden, Washington, DC, for Petitioners.

A.V. Conway, II (argued and briefed), Hartford, KY, for Arthur E. Hill.

Patricia. Nece, Jill M. Otte, U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: SILER and COLE, Circuit

Judges; WISEMAN, District Judge*.

COLE, Circuit Judge.

Petitioners, Peabody Coal Company and Old Republic Insurance Company (Peabody), appeal the decision and order of the Benefits Review Board of the United States Department of Labor (Board). The Board awarded benefits on a claim which Respondent, Arthur Hill, an employee of Peabody, filed pursuant to the provisions of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. Peabody argues that the administrative law judge (ALJ) failed to explain adequately his reasons for favoring the medical testimony of some physicians over that of others. For the reasons stated below, we **AFFIRM** the judgment of the Board.

## I.

Born in 1921, Arthur Lee Hill worked underground as a coal miner for thirty-seven years. Having a seventh-grade education and no vocational training, Hill was employed from 1975 to 1983 by Peabody Coal Co. The last coal mine assignment Hill performed for a substantial period of time was that of an underground shuttle car driver. This job involved sustained, heavy, manual labor, including the loading, unloading, and manhandling of timbers which Hill transported deep underground into low and narrow passages for use by coal extraction crews. He was also required to load and unload other items he transported as part of his job.

Hill underwent a series of medical tests and examinations in 1983 to determine whether he had occupational pneumoconiosis. Among the tests performed were x-rays, the radiographic interpretations of which were in conflict, and multiple ventilatory and blood gas studies, which, while demonstrating some evidence of pulmonary impairment, were not sufficient to establish total disability.

In addition, five physicians performed a series of comprehensive medical examinations on Hill. In January 1983, Dr. Valentino Simpao, experienced in pulmonary and respiratory disease, performed such an examination on Hill and concluded that he had a pulmonary disability that was moderate to total. Attributing this disability to a history of exposure to coal mine dust, he found that it was caused by pulmonary fibrosis with chronic bronchitis. Dr. Simpao examined Hill again in August 1983 and reported comparable findings. On March 7, 1983, Dr. William West, a general practitioner who directs a miner's respiratory clinic in West Virginia, administered a similar examination and reported that Hill was permanently and totally disabled for coal mine employment due to exposure to coal mine dust. Dr. West also noted the nature and exertional demands of Hill's coal mine work. Still another physician, Dr. Sam Traughber, whose credentials are unclear from the record, conducted an equally comprehensive examination on March 18, 1983 and found that Hill's pulmonary complaints were due, in part, to coal mine dust exposure and to a lengthy cigarette smoking history. He diagnosed pneumoconiosis. Dr. Traughber found Hill totally disabled, partially due to pneumoconiosis.

In May and June 1983, two physicians examined Hill on behalf of Peabody. Dr. W.H. Anderson, a board-certified internist with a certified subspecialty in pulmonary disease, examined Hill on May 20 and found a Class 3 or 25–35% disability, no pneumoconiosis, and a mild decrease in functional capacity not precluding any work other than exertion of a demanding nature. He attributed this condition solely to Hill's cigarette smoking history. Dr. O'Neil, also experienced in pulmonary and respiratory disease, examined Hill and reported that while Hill had a probable mild obstructive airway disease, he did not suffer from pneumoconiosis or from any other respiratory function attributable to coal mine employment.

On June 16, 1983, Hill filed his federal black lung claim. Peabody denied liability, contending that Hill was not totally disabled as a result of an occupationally related lung

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

disease. The Department of Labor (DOL) initially determined that Hill did not qualify for the requested benefits.

Hill requested a hearing before an administrative law judge with DOL. The ALJ held a hearing on September 10, 1986. On October 5, 1987, the ALJ issued a decision awarding Hill benefits. Peabody filed an appeal to the Benefits Review Board. On February 28, 1989, the Board issued a decision vacating the ALJ's award of benefits because of an application of the wrong regulations and remanded the case for subsequent adjudication. In vacating the ALJ's original decision, the Board directed the ALJ to reconsider all appropriate evidence and to base the decision on the criteria established in 20 C.F.R. pt. 718. In accordance with the Board's directive, the ALJ issued another decision and again awarded Hill benefits. Peabody again filed a timely appeal to the Board. On May 18, 1995, the Board issued a decision and order affirming the award of benefits. Peabody filed a Motion for Reconsideration, which the Board denied on March 22, 1996. Peabody then brought this appeal.

## II.

 The scope of our review of decisions of the Board is limited. *Consolidation Coal Co. v. McMahon,* 77 F.3d 898, 900 (6th Cir.1996). This court must affirm the Board's decision if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. *Director, OWCP v. Quarto Mining Co.,* 901 F.2d 532, 536 (6th Cir.1990). The standards of review for the Board and this court are the same. *Welch v. Benefits Review Bd.,* 808 F.2d 443, 445 (6th Cir.1986) (per curiam). Accordingly, "[w]hen the question is whether the [administrative law judge]

reached the correct result after weighing conflicting medical evidence," *Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 246 (6th Cir.1995), the scope of review of both the Board and this panel is exceedingly narrow. "Absent an error of law, findings of fact and conclusions flowing therefrom must be affirmed if supported by substantial evidence." *Consolidation Coal Co. v. Worrell,* 27 F.3d 227, 230–31 (6th Cir.1994) (per curiam).

 Substantial evidence is that which a reasonable mind would accept as adequate to support a conclusion. *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 488 (6th Cir.1985) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In deciding whether the substantial evidence requirement is satisfied, we consider whether the administrative law judge adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding either to award or deny benefits. *Director, OWCP v. Congleton,* 743 F.2d 428, 430 (6th Cir.1984). Finally, when dealing with a claim for benefits, we keep in mind that the Black Lung Benefits Act is remedial in nature and must be liberally construed " 'to include the largest numbers of miners as benefit recipients.' " *Tussey v. Island Creek Coal Co.,* 982 F.2d 1036, 1042 (6th Cir.1993) (quoting *Southard v. Director, OWCP,* 732 F.2d 66, 71 (6th Cir.1984)).

## III.

 As part of its provisions, the Black Lung Benefits Act "provide[s] benefits . . . to coal miners who are totally disabled [1] due to pneumoconiosis." [2] 30 U.S.C. § 901(a). In order to establish entitlement to benefits, a claimant must prove that: (1) he suffers from pneumoconiosis; (2) the pneumoconiosis

---

1. The Code of Federal Regulations defines "totally disabled" as pneumoconiosis which "prevents the miner":

 (1) From performing his or her usual coal mine work; and

 (2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time. 20 C.F.R. § 718.204(b).

2. 'Pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. . . . For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment. 20 C.F.R. § 718.201.

arose out of coal mine employment; and, (3) the pneumoconiosis is totally disabling. *See* 20 C.F.R. §§ 718.2, 718.202–718.205; *Adams v. Director, OWCP,* 886 F.2d 818, 820 (6th Cir.1989). In bringing a claim for benefits, the claimant bears the burden of proving each element of his claim by a preponderance of the evidence, except insofar as he is aided by a presumption. *See* 20 C.F.R. § 717.403; *Director, OWCP v. Mangifest,* 826 F.2d 1318, 1320 (3d Cir.1987); *see also* 20 C.F.R. §§ 718.203(b), 718.302–.306 (presumptions). Failure to establish any of these elements precludes entitlement. *Perry v. Director, OWCP,* 9 BLR 1–1 (1986).

▆▆▆ In reviewing a miner's claim, an administrative law judge is statutorily obliged "to consider all the evidence and make findings of fact and conclusions of law which adequately set forth the factual and legal basis for his decision." *Director, OWCP v. Rowe,* 710 F.2d 251, 254–55 (6th Cir.1983).[3] An administrative law judge must weigh all contrary probative evidence[4] and should not limit her inquiry to weighing medical evidence of the same type or category. *See Fields v. Island Creek Coal Co.,* 10 BLR 1–19 (1987); *Shedlock v. Bethlehem Mines Corp.,* 9 BLR 1–195 (1986).

In this case, Peabody expressly "concedes" that the ALJ's decision is supported by substantial evidence, yet argues that since the ALJ failed to adequately "examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion ... is based," *see Rowe,* 710 F.2d at 255, the case should be vacated and remanded. Peabody contends that "not a single one of the ALJ's findings" satisfied his duty of ex-

planation. In support of its position, Peabody directs our attention to *Barren Creek Coal Co. v. Witmer,* 111 F.3d 352 (3d Cir. 1997), in which our colleagues in the Third Circuit found that on the facts before them, "the absence of explanation in certain portions of the [administrative law judge]'s Decision and Order render[ed] meaningful review impossible by this court, as we are unable to determine the analytic process behind the result." *Id.* at 354. As our review of the present matter indicates, however, we find the ALJ's explanations adequate for us to conduct an appropriate review of the record;[5] Peabody's claim is therefore without merit.

▆▆▆ For a miner to sustain a claim, he must first establish the existence of pneumoconiosis. *See* 20 C.F.R. § 718.202. Specifically, a claimant may demonstrate he suffers from a coal dust disease by a chest x-ray, a biopsy or autopsy, the presumptions described in §§ 718.304–.306, or by the finding of a physician exercising sound medical judgment. *See* 20 C.F.R. § 718.202(a)(1)-(4). As noted above, an administrative law judge reviewing a claim for benefits must adequately explain the reasons for crediting certain testimony and medical opinions over evidence in the record which supports a denial of the claim. *See Congleton,* 743 F.2d at 430.

▆▆▆ In this case, Peabody claims that the ALJ failed to consider the basis of the conclusions of Drs. Simpao, West, and Traughber that Hill had pneumoconiosis and failed to consider contradictory evidence. The record indicates that the ALJ found that the conflicting radiographic interpretations of Hill's chest x-rays—positive and negative— meant that Hill failed to establish the pres-

---

**3.** See 5 U.S.C. § 557(c)(3)(A) (The Administrative Procedures Act (APA) requires that an administrative law judge's decision be accompanied by "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law or discretion presented on the record."); *see also* 20 C.F.R. § 725.477(b).

**4.** *See* 20 C.F.R. § 718.204(c).

**5.** In what may be an attempt to distract this court's attention, Peabody also devotes a substantial portion of its brief to *Director, OWCP v. Greenwich Collieries,* 512 U.S. 267, 114 S.Ct.

2251, 129 L.Ed.2d 221 (1994), a case which held that the "true doubt rule" applied by DOL administrative law judges, under which the burden of persuasion is shifted to the party opposing the benefits claim in cases where the ALJ expresses doubt about which testimony to credit, is invalid, as it conflicts with § 7(c) of the Administrative Procedures Act, 5 U.S.C. § 556(d). Section 7(c) places the burden of persuasion on the claimant. Since in this case there is no evidence that the ALJ resolved doubt in favor of Hill, there is no need to discuss Peabody's arguments as they concern *Greenwich Collieries.*

ence of pneumoconiosis by x-ray evidence. *See* 20 C.F.R. § 718.202(a)(1). He also found, however, that Hill did establish the existence of pneumoconiosis by three physicians' findings. *See id.* § 718.202(a)(4).[6] Specifically, the ALJ found that the opinions of all five physicians were documented and reasoned medical opinions. *See Rowe,* 710 F.2d at 251. The ALJ also weighed the opinions of the doctors against 20 C.F.R. § 718.201, the regulation that defines pneumoconiosis as any pulmonary impairment significantly related to or substantially aggravated by coal dust exposure, as required by *Southard v. Director, OWCP,* 732 F.2d 66 (6th Cir.1984). In light of these requirements, the ALJ found that neither of the physicians who examined Hill on behalf of Peabody persuasively discounted the effects of Hill's thirty-seven years of underground employment in rejecting the impact of coal dust exposure in their analysis of the cause of Hill's disability. The ALJ noted that these physicians offered no detailed analysis to support ruling out coal mine employment as the cause of Hill's respiratory condition. The ALJ also noted that the opinions of Drs. Simpao and West did not take into account Hill's smoking history. Finding that Dr. Traughber's opinion accounted both for coal dust exposure and smoking history in diagnosing pneumoconiosis, the ALJ found this physician's opinion the most credible. Finally, the ALJ noted that while the x-ray evidence did not establish pneumoconiosis, the record did contain many positive readings, including two such opinions by certified B readers.[7] He further noted that additional medical evidence used by Drs. West, Simpao,

and Traughber were based on many factors that included and extended beyond the x-ray reports. The ALJ thus concluded that Hill established the existence of pneumoconiosis. Since the ALJ appears to have met his duty of explanation, we find that this part of the ALJ's decision was supported by substantial evidence. *Accord Rowe* at 251.[8]

Having demonstrated the existence of pneumoconiosis, a claimant then bears the burden of establishing the relationship of the disease to coal mine employment. *See* 20 C.F.R. § 718.203. This subsection provides that a miner suffering from pneumoconiosis employed for ten years or more in one or more coal mines enjoys a rebuttable presumption that the disease arose out of his coal mine employment. *Id.*

■ In the present matter, Peabody contends that the ALJ failed to explain properly his decision. However, the ALJ found that Hill's thirty-seven years underground entitled him to the presumption available in the regulations. Moreover, he found that while the opinions of Drs. Anderson and O'Neil supported the rebuttal of this presumption, their opinions were outweighed by that of Dr. Traughber, again because Dr. Traughber took into account both Hill's employment and his smoking.[9] Accordingly, the ALJ found that Peabody did not sustain its burden in rebutting the presumption that Hill's disease arose of out coal mine employment. We find that this part of the ALJ's conclusion was also supported by substantial evidence. *Accord Rowe,* at 251.

---

**6.** This subsection provides that "[a] determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that the miner suffers ... from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion." 20 C.F.R. § 718.202(a)(4).

**7.** The use of, and qualification for, B readers are provided at 20 C.F.R. § 718.202(a)(1)(i)(E).

**8.** In affirming the ALJ, the Board noted that the ALJ did make errors about some of what the physicians stated and did not state in their opinions, but discounted these errors as harmless as they did not affect the disposition of the case. *See Larinio v. Director, OWCP,* 6 BLR 1–1276 (1984).

**9.** Similarly, in *Hannah v. Eastern Associated Coal Co.,* 111 F.3d 129 (4th Cir.1997), the Fourth Circuit held that medical opinions which do not rule out coal mine employment as a cause of or contributor to the claimant's total disability "have no probative value on ... rebuttal question[s]." *Id.* (citing *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 123 (4th Cir.1984)).

The final burden a claimant bears is that of establishing that he is totally disabled due to pneumoconiosis. *See* 20 C.F.R. § 718.204(c);[10] *Adams*, 886 F.2d at 820. Still again, Peabody contests the basis for the ALJ's conclusion. However, while substantiating total disability requires the reviewing administrative law judge to consider each part of the evidence and weigh the evidence accordingly, 20 C.F.R. § 725.477(b); *Knuckles v. Director, OWCP*, 869 F.2d 996, 998 (6th Cir.1989), this circuit has held that "if pneumoconiosis at least partially contributes to his total disability, [a claimant] is entitled to recover benefits." *Youghiogheny & Ohio Coal Co. v. McAngues*, 996 F.2d 130, 134 (6th Cir.1993).

█ In making this determination in Hill's case, the ALJ noted that while the ventilatory and blood-gas studies did not demonstrate total disability, the opinions of the physicians examining Hill, including those doing so for the benefit of Peabody, as well as the uncontroverted testimony about the physical demands of Hill's job, demonstrated total disability as defined by 20 C.F.R. § 718.204(b), (c)(4). The ALJ properly concluded that Hill demonstrated total disability. Consequently, we conclude that the ALJ's findings that Hill demonstrated he was totally disabled and that Hill was entitled to benefits were supported by substantial evidence, and that the ALJ did not violate the dictates of the Administrative Procedures Act. *Accord Consolidation Coal Co.*, 27 F.3d at 231; *Rowe*, 710 F.2d at 254–55. Thus, we affirm the decision of the Board. *See Quarto Mining Co.*, 901 F.2d at 536.

## IV.

For the foregoing reasons, we **AFFIRM** the order of the Benefits Review Board.

---

10. This may be accomplished by positive results of pulmonary function tests or arterial blood-gas tests, by a diagnosis that the claimant is suffering from cor pulmonale with right side congestive heart failure, or by diagnosis of a physician exercising reasoned medical judgment that the claimant is unable to perform his usual coal mine work or comparable work. *Id.*